Case number 18-3913, Damien Freeman v. Lyneal Wainwright, Warden. Oral argument not to exceed 15 minutes per side. Catherine Smith-Mitchell Tombras for the appellant. You may proceed. May it please the court, Catherine Mitchell Tombras for appellant Damien Freeman. I have reserved 3 minutes for rebuttal. Your honors, the question here is narrow. There is no dispute that any new substantive sentence less favorable to a petitioner restarts the one year limitations period under AEDPA. Is your position that just any change at all, even a change under rule say 35B, restarts the clock? No, your honor. Our position is that any substantive resentencing restarts the clock. But if it truly is a scrivener's error, clerical error, technical fix, then it does not restart the clock. Well, it seems to me that the State Court of Appeals in telling the trial court that it issued a non-protunct order is saying it was void ab initio. Never was a valid order. It's a mistake. Your honor, this issue was actually resolved in both Krangel and Stanzel. Both of those cases involved non-protunct orders that impose post-release control. There's a lot of gibberish in the State Court. I know that. I served on one about what's a non-protunct order. But the effect of it, whatever you call it, was to say this never should have been in the order because it's not allowed by state law. Why isn't that a technical or a mistake, technical error or mistake? Yes, and this question was addressed in Krangel where the Krangel court said when it considered whether the non-protunct order involved there was in fact a technical fix, as argued by the state, or was something different. And it said a state court's decision to affix the label non-protunct does not control the federal question whether the order changes a petitioner's conditions of confinement. And so what it really turns on here is whether there's a material change in the conditions of confinement. And if you look at what a Scribner's error is, it is whether the state court's actions during the plea hearing are accurately reflected in the sentencing entry. So here, like in Krangel, the state court in the plea hearing intended to impose post-release control. That's correct, but that is what they told the prisoner during the plea hearing. It was reflected in the sentencing entry, and it should not have been. And when it was corrected, it resulted in a material change to his terms of confinement. Is the dicta in this court's Krangel opinion contrary to the Supreme Court's holding in Burton? No, Your Honor. We think, I'm sorry, but yes, the dicta is contrary to the Supreme Court's holding in Burton. Is it dicta, though, really? Because the Krangel court analyzes whether, there was a question in Krangel about whether that particular person's sentence was more or less favorable, right? In the second part of the opinion, the part you were talking about the non-protunct, there was a question about whether it was more or less favorable. Why would Krangel have talked about that question at all unless the rule depended on whether it was more or less favorable? And therefore, determining that if you're better off, it doesn't restart the clock is not dicta. It's just part of whatever the test is. So I would disagree with that being the issue that was presented in Krangel. So the issue that was presented in Krangel was whether the non-protunct order issue there was a new judgment that restarted the clock. And the state argued that it was not because the original sentence included at least five years of parole. So when the new sentence imposed five years of post-release control, the state argued it was substantively identical and therefore was not a new sentence. It was essentially the same. And so the Krangel court needed to resolve was it substantively identical or was it not in order to reach the decision as to whether it was a new sentence. And the court analyzes that question and finds no, it's not substantively identical. Post-release control under Ohio State law is more onerous and is a material change in his conditions of confinement resulting in the new sentence. Therefore, reaching the question of whether facts not presented, whether something is more favorable to a petitioner, was not squarely at issue in the Krangel decision. I understand. I mean, I understand eventually they found it was more onerous and therefore, in theory, that particular scenario wasn't at issue. But having to go through that exercise tells me that, I mean, the fact that they went through the exercise tells me that the more or less favorable was consequential. And therefore, the things they said about more favorable, in other words, if you had fit into that box, you wouldn't have gotten relief. So they're just outlining what the contours of the test are. If it's more favorable, the clock doesn't restart. If it's less favorable, the clock restarts. And then we analyze, in this case, what box it falls into. Oh, it's less favorable. But that doesn't mean that all of this discussion is dicta. It's all part and parcel of getting to the end result, isn't it? I don't believe so. I think In re stanzel, another opinion of this court just a few months before Krangel, is informative here. There, the court found that the imposition of post-release control through a non-protunct order partial resentencing was a new judgment. And at no point did that court feel that it needed to carve out partial resentencies that were more favorable to a petitioner. They simply said the facts presented here are a non-protunct order that imposes post-release control through a partial resentencing, not the full resentencing that had been at issue in King. And under these facts presented, we say, yes, it's a new sentence, and therefore the petitioner can challenge both the conviction and the new sentence as the one final judgment under federal habeas law. So does the finding that the 2016 order amounted to a new judgment, does that frustrate the congressional purpose in enacting the AEDPA by going against Ohio law? Your Honor, this kind of question was addressed in both Magwood and In re stanzel, and it was rejected there. This idea of whether or not going down this path of recognizing one final judgment, that the judgment is the sentence as it relates to federal habeas law, goes against the purposes of AEDPA, and it said no. It pointed out, and stanzel reconfirmed, that across the board, AEDPA does have the effect of increasing the burden, promoting finality among these kinds of petitions. That doesn't mean that in a few instances where you do have petitioners that have a new judgment, it may lessen the burden. But that is not frustrating the overall goals and aims of AEDPA, which have occurred since the statute was enforced. In addition, In re stanzel and Magwood both point out that fears of abuse are, as Magwood put it, greatly exaggerated. They point out that you still have things like state procedural default rules, claim exhaustion rules that come into place. As well as points out that if you did have a claim that was found to be non-meritorious, a later court could quickly recognize that and dismiss it quickly again. Can we go back to, and I think I rudely interrupted Judge Donald's question, but it had to do with burden. Can you talk a little bit about burden, and it seems like you're putting a lot of weight on that case. Yes, Your Honor. The reason that we put a lot of weight on the Burton case is because it is in that case that the Supreme Court analyzed and made clear that in a criminal case, the sentence is the judgment. And it mattered there, it came up in the posture of second or successive under the AEDPA statute, and it mattered there because the petitioner had filed two petitions. And the second was found to be second and successive, and the petitioner said, but I had no choice. If I didn't file that first one when I did, I would have exhausted that statute of limitations period. And so I had no choice but to file that first one and then a second one after a resentencing. And the court said, no, in a criminal case, the sentence is the judgment, and therefore it was not until you were resentenced that that judgment became final and the limitations period began for when you could file your habeas claim. And what is so important in that case is that the new sentence at issue was more favorable to the prisoner. What it did was it added the number of jail time credits that he had. But it's not apparent from Burton. I mean, you have to do some digging to figure that out, don't you? I mean, you have to kind of go back and look at the state court decisions. I mean, there's nothing in Burton. I mean, we're talking about what's dicta and what's not. There's nothing in Burton that says anything about it being more or less favorable or anything. Is there? Yes, Your Honor, and that's exactly why we think the rule that we are advocating for is the right one. Because that is not what should matter here, is whether something is more or less favorable. What should matter is what was articulated in Kringle, what was articulated in Burton-Magwood, which is, does the new sentence cause a material change in the conditions of confinement? And if it does, that's a new sentence. I mean, if you get a more favorable sentence, why should you be able to reopen your conviction and we go back and we look at arguments that you could have made years ago and just because you got a more favorable sentence. I mean, just as a common sense matter, it seems ridiculous, doesn't it? No, I don't think so, Your Honor. And part of that is because what is more favorable in some cases is subjective. And if you are a criminal defendant and, you know, perhaps you think the proper sentence should have been, it was ten years, you think the proper re-sentencing should be two years, and they gave you six years. During that re-sentencing phase, you may still have constitutional claims that are new to that re-sentencing phase that have to do with what is, quote, a more favorable sentence, but in the petitioner's perspective is still not the proper sentence and has federal constitutional harm to him. So by ensuring that it's not about what is favorable or less favorable, but rather is about is it a material change in the conditions of confinement, protects and safeguards the petitioner's right to have a federal habeas claim to protect his constitutional rights. And reopen his conviction. I don't get it. I'm with Judge Savanian. I don't get it. It doesn't make any sense. In this case, the trial judge had no authority to impose this sentence. So it never was effective. So what's that got to do with his conviction? Again, Your Honor, this was resolved already by the Supreme Court and applied in King, which is that the judgment is, I see my time is up. May I finish? Yes. The judgment in a criminal case is the sentence and the conviction. It is established precedent that that is so. Magwood says that directly. So under that, if we say, okay, this sentence was void ab initio, the original sentence, because it did include that confinement period, and now the court is demanding that a new judgment be entered, if we take that literally, then this is the first time that there was an actual judgment in the case, regardless of whether it's favorable or unfavorable. Is that correct? That's correct. So what the courts say, both the Supreme Court and the Sixth Circuit, say is that the judgment that matters here is the judgment pursuant to which the petitioner is in custody. And that is the new sentencing entry in Mr. Freeman's case. Thank you. Thank you. Your Honors. May it please the Court? My name is Jerry Fosnaught. Counsel, I'm sorry that I'm going to take you a little bit off track, because I want you to respond directly to the last point I raised with Petitioner's Counsel. So if the court determines that the original sentence was void, never existed, when they impose the new sentence, how can that not be the place on which the clock commences? I don't believe that's correct under Ohio law. Ohio law provides that only the void portion of the sentence is considered void and a nullity. That's State v. Fisher. There's a variety of Ohio Supreme Court case law on that point. And only the void portion of the sentence has to be corrected. And they did that through the non-protunct entry, which is now for then and replaces the original. Nothing in the second entry is different from the first entry, except for the line deleting the deleted portion that should never have been there regarding post-release control. The problem I have with the non-protunct argument is that if somebody hadn't caught it and he finished his custodial sentence, he would be under post-custody control, would he not? That part of the sentence probably would have been carried out? Theoretically, he could have been. According to Kringle, this court believes that they would have proceeded simultaneously. It's Ohio's position that the longer portion of custody would have controlled, which would have been the life sentence. Ohio believes that the Ohio Parole Board would have enforced the life, which could have sent him back for life if he violates and not the five years that ends after five years and limits you to re-imprisonment for up to half the time previously imposed. Now, Freeman seeks to restart the statute of limitations after 10 years of no activity from April of 2005 to August of 2015, simply because the Ohio trial court did what the appellate court ordered it to do upon remand, which was to issue a non-protunct entry, deleting the post-release control that never should have been imposed. A review of this court's record and the precedent demonstrates that Freeman's petition is time-barred. The argument that it would be contrary to Burton, Kringle would be contrary to Burton, is not correct because Burton and Magwood both addressed full resentencings. And that's what this court noted in Stancil and Kringle, that Burton and Magwood deal with full resentencings. We have to deal with, in those two cases, the limited resentencings that involve post-release control in those cases. And they had to decide what to do with it. But why does it matter whether it was a full resentencing or not, as opposed to whether it's just a new judgment or not? As opposed to whether it's just a new judgment or not. It looks like, and I can't know what the court was doing in deciding in Stancil and Kringle, it looks like they were both concerned with, as Judge Norris pointed out, motions for sentencing reductions in federal court cases. And they had to figure out how to distinguish what they were doing in Stancil and Kringle and not cause those motions to also restart statute of limitations in federal cases and re-allow, re-authorize new successive petitions in those cases. In both cases... I'm trying to figure out what the rule is then. So if I get something that's less favorable, that restarts the clock, right? Whether I had a full resentencing, it was a non-proton, who knows what it was, but it was less favorable to me. Full resentencing regardless, favorable or unfavorable, restarts, according to Burton and Magwood and this court's precedent in King v. Morgan. Though it is inconsistent with this case. No. He did not get a full resentencing. Burton and Magwood and King v. Morgan say full resentencing restarts. Well, King dealt with successive petitions, but it says full resentencings restart the clock. So how are you defining full resentencing? Does it have to go back before the court and have another hearing and then the court imposes a new judgment? Right. How are you defining full resentencing? Right. A full resentencing would be, I mean, the court in King v. Morgan said a full resentencing and the judgment that goes with it. So in that case, it is my understanding he received a full sentencing where he appeared in court, the court re-advised him of the sentence imposed, probably told him about his appellate rights, and issued a new judgment that goes with it. So for a full resentencing, does the trial court upon remand revisit the punishment? Yes. And decide, well, is that an appropriate punishment for this conduct as may be redefined by the reversal? Redefined by the reversal. Now, like if the court was saying, we've decided this allied offense, we vacated this allied offense, so now you have to resentence under the offense that merged and it's now available. Yes. But they're bound by the law that existed at the time of the crime, I believe. The sentencing law that existed at the time he committed the offense. So they can't revisit that issue. But it would be a full resentencing and he'd have to appear in person. In this case, he did not appear in person. And under Ohio law, he would be able to allocute again. The victims would be able to come in and give their portion of the testimony for a full resentencing. And the court would reevaluate the purposes and principles of sentencing under the Ohio law. And for that, what case are you relying on? Are you saying that's what Burton requires? Well, Burton says, Burton and Magwood dealt with full resentencing. Magwood, more specifically, I don't remember if Burton specifically talked about it was a full resentencing. But Magwood said it was a mitigation portion and the imposition of, I think, a death sentence. And they said that an error that occurred an additional time in the resentencing proceeding is a new error. I want to go back to your statement. You said on the full resentencing, does it matter whether it's better than, I mean, more favorable or less favorable? That doesn't matter. Full resentencing, the clock starts again. But in a partial resentencing, if it's less favorable, the clock starts. But if it's more favorable, the clock doesn't start. Is that what you said? Right. Okay. So take an example that Ms. Stevens gave earlier. Let's take a situation where there is a, under this hypothetical, there is a new judgment where there was five years of imprisonment initially. And under this new judgment, the person has, you know, two years, but five years of supervision. What do we look at to determine whether that's more favorable or less favorable? Because they're at inherent risk when people are on, as they say, on paper for a long period of time. How do we know whether that's less favorable or more favorable? I believe the court would have to do what the court did in Kringle. And the court was looking at the differences between parole and post-release control and what consequences of each would be. Like, would you have, if you had fully served your five years, but on your five years of supervision, does that mean you could be sent back for five years? Could you be sent back for only three? Would it be the net effect? The court lays it out in Kringle. Now, our position in Ohio was that we liked the old Bachman way of dealing with it. However, this court in Kringle said, Bachman's no longer good law. We disagree. Stancil said that neither Magwood nor King had anything to say about whether the statute of limitations issue. And that was a published decision. This court overruled it in Kringle. But now we're in this situation with the Kringle and Stancil and King case law. And those are published decisions. And if opposing counsel seeks to relitigate those issues, it has to be done on Bachman. So if Freeman's sentencing was limited, such that it didn't qualify as a new sentence or final judgment, why wasn't the petitioner's new sentence in Kringle also not, I mean, not similarly characterized? What was so different between the two of them that they didn't? Well, Kringle, he had post-release control imposed. Like, it was never in the entry in the first place, and they added it. So he had five years added of post-release control to his sentence, and this court held that post-release control was more onerous, more of a burden. Since it was more onerous, he didn't have to go back for a full re-sentencing because it was deemed more onerous. Is that right? No. In Ohio, everybody except, for example, this case, if you have a classified felony, post-release control is imposed. Person to Senate Bill 2, it's post-1996. You get post-release control if it's a classified felony, like a felony of the first degree, that sort of thing. This is an unclassified felony. In Ohio, unclassified felonies do not get post-release control. So he was never eligible to receive post-release control. It shouldn't have been in his sentence. All right. You can continue your argument now. Okay. Do all the cases that they cite, there are a number of cases that are cited from outside our circuit that talk about this or apparently restart the clock with a more favorable sentence. Do those involve full re-sentencings? Do you know? I believe I addressed it in my brief. One of them did involve a full re-sentencing. I thought it was gray. Romanski was a limited re-sentencing and follows in line with Krangel. Insigniares, I believe, was also a limited re-sentencing. And I can't remember if that's the one that relied on California law. It was either that one or Gonzalez that relied on California law to determine whether it was a new judgment. So there are various issues in all of those cases. I addressed them in my brief. But we would cite Romanski as being most similar and on point and consistent with Krangel. And, again, as I said, Krangel is the law of this circuit and cannot be changed absent this court sitting on bonk. Well, but Krangel, I mean, this is the whole question about whether it was dicta or not. Oh, true. And I'll get to that. As I noted before, in Stancil and in Krangel, both, the court specifically addressed more limited re-sentencings. And in Stancil, the court said, we do not imply that any change in the petitioner's sentence opens the door. They say we're not going to, we don't know what will happen in non-custodial aspects, if it vacates a sentence, if it grants a motion to reduce a sentence because of substantial assistance as in federal cases. Doesn't that language in Stancil imply that a more favorable sentence could restart the clock? That could. I mean, it's a lot of speculation at the end of Stancil. I mean, all that's dicta. That could, but then they go into Krangel and they say, our analysis is consistent with a line of cases that hold a limited re-sentencing which benefits a petitioner, such as a sentencing reduction proceeding under 18 U.S.C. 3582C or Criminal Rule 35B, do not constitute a new judgment. A reduced sentence is not a new one. Yeah, no, I mean, the language is clear, I suppose, but the case itself did not involve a more favorable sentence. It was less favorable. It did not involve a more favorable sentence. So is that dicta? No, because the court essentially was saying, we need to decide here how we're going to address an issue where the state says that it is a no change in the sentence versus a more substantial change in the sentence. And here, as the court decided in Krangel, a new worse than before sentence is a new judgment. That's what the court held. And in getting there, they had to distinguish the cases that involve post-sentencing reduction. And they also go back at the end of Stancil. They discuss a non-pro-tunk entry that corrected the court's records to respond to a sentence announced in the 1998 hearing. And they say, to hold otherwise, that non-pro-tunks in that circumstance could restart just for technical corrections. To hold otherwise would turn those requirements into a game of I-spy, where the petitioner best able to catch the court's technical errors will earn himself a free pass and maybe many free passes into federal court. And that's the case in Ohio. Ohio has a provision, like they believe, in truth in sentencing. And they allow petitioners where their sentencing entry is incorrect as to post-release control to challenge them at any time. Including if that petitioner were on post-release control at the time, he could go back into court in a state habeas case and file it in the Ohio Supreme Court and they would release him from post-release control if he were not eligible, as in this circumstance. But this isn't a clerical error, right? What Stancil was talking about, the end there? The court in Ohio says that non-pro-tunks, it's a state, Allen v. Goulding, it's an Ohio Supreme Court case from 2019 that I cited in my brief, and they say that non-pro-tunks are available in these circumstances where post-release control is imposed as a nullity and does not belong in the case and needs to be deleted. But that's an error, but it's really not a clerical error, right? It's a technical procedural error. It's a mistake because they shouldn't have done it. But it's not like the judge, it's not like the difference between an oral pronouncement and what was in the writing, right? It's not one of those, but it is a technical procedural correction that the court found and has said that non-pro-tunks are eligible in this circumstance to delete what should have never been there. But do we have to just take that as a given? Like whatever the state of Ohio says, okay, we use non-pro-tunk and it always means this, and therefore we are bound by however the judgment is defined by Ohio? You don't have to do that because that's what Kringle said. Kringle did not accept Ohio's interpretation of the non-pro-tunk order, so no, you don't have to do that. But in this case, it's appropriate in these circumstances where the order included a provision that never should have been there, is contrary to law, doesn't exist in the statute, is not authorized by the statute, the trial court had no authority to impose it, and the Ohio Supreme Court has said we can use non-pro-tunks in these circumstances to simply delete it. And that's what they did here. And this error benefited, the error correction that happened here benefited the petitioner. And for the reasons set forth right now and in my brief, we ask this court to affirm the judgment of the district court. Anything further? Thank you. Your Honors, I'd like to address three points that Pelley's counsel made. The first briefly on non-pro-tunk, Kringle and Stanzel both looked at non-pro-tunk orders that impose post-release control. Kringle said, no matter the label, an order that substantively changes a sentence amounts to a new judgment. And Reece Stanzel said similarly, calling post-release control a technical correction does not make it so. Kringle made clear that whether or not the state calls something a non-pro-tunk does not control the federal question, whether the order changes a petitioner's conditions of confinement. That is what is at issue here. Does the new sentence change the petitioner's conditions of confinement? Second, I wanted to speak briefly about full resentencings. The issue here is whether we follow this language in Kringle about whether a limited resentencing that benefits the prisoner restarts the clock.  I mean, that's the issue. What do we do with the federal, the Rule 35 and the other federal stuff? I mean, if we say that this restarts the clock, do we have to restart the clock in the federal system too? No, Your Honor. And as we described in our brief, the language that discusses the very specific federal statutes that articulate sentence reduction or sentence enhancement proceedings and their effect on judgments is an exception. Where there is a statute that explicitly and specifically speaks to it, that's not inconsistent with the general rule that a new sentence is a new judgment consistent with Burton and Magwood and the cases in this Court. Going on just a bit more about the full resentencing, a few points there. First, Appellee articulates no sound reason why some more favorable sentences should lead to a new judgment but not others. So we all agree that the law says that any full resentencing, whether more favorable or less favorable, results in a new judgment. But it's not clear why it should turn on the more favorable for a full resentencing versus a partial. But we've never said, have we had a case with a full resentencing that resulted in a more favorable sentence that restarted the clock? Your Honor, Burton involved a more favorable sentence. I know, but what about our cases? Because Burton, I don't, I'm not sure I agree with you about, you're reading a lot into Burton and maybe we can figure that out, but what about our court post-Burton? What have we done? We, I am not aware right now of a full resentencing that was more favorable than this Court. But we've never said that either. It could be that no more favorable sentence restarts the clock. King does apply Magwood, where it says that a full resentencing restarts when you can bring a habeas claim, when the new judgment is. So Magwood, what was specifically presented in Magwood was whether or not it could be a new habeas claim that attacked the new sentence as part of the new judgment. King applied Magwood and said, yes, with a full resentencing you can attack the new judgment, not only the new sentence, but the underlying conviction as well. King, when it applied Magwood and said for all full resentencings, you have a new judgment. It was not a more favorable sentence, but it did not suggest there was any distinction, as I recall, between more or less favorable. Well, it didn't say one way or the other, right? That's right. And I think that is telling, Your Honor, because that isn't what it should turn on. What the cases make clear it turns on, including Krangel, is whether there's a material change to the conditions of confinement. That is what Krangel looked at. Appellate's counsel said the same thing. Krangel looked at whether, Krangel says specifically, did the November 2010 non-protunct order affect a new worse-than-before sentence? It says, we're going to figure out whether it was worse than before. They wouldn't have said that if it wasn't consequential, right? In other words, if it had been better than before, no need to do this, right? I don't think so, Your Honor. I think they were responding to what the, if you look at the supplemental briefing that the Krangel court requested, they specifically asked for briefing because of King that had come down during the briefing process about what the effect of this protunct order was in light of King. And the way that the State made their argument was, again, focusing on the fact that it, I'm so sorry, I see my time is up. Let me finish answering this question. Thank you. It was on whether or not it was substantively identical. The State was not saying that it was more favorable or that something turned on more or less in the supplemental briefing. They were saying that because you had the parole in the earlier sentence just switched to post-release control, it was identical. It was the same. It was a wash. And the court was answering and making its conclusion when faced with the presentation of those arguments. I think what strikes me about your Burton argument is how embarrassed our court must be. We've reaffirmed Krangel on so many occasions and never caught it. So I guess you'd be congratulated if we follow your lead. Pretty obscure reasoning. Did you wish to comment from her on your statement? Thank you very much. I was complimenting her. And as we note that you are CJA appointed in this case and we certainly appreciate your taking the case and appreciate your advocacy. Thank you. I believe this is the last oral argument case, that being the case of Clark.